1  **WO**

2  NOT FOR PUBLICATION

3

4

5

6  IN THE UNITED STATES DISTRICT COURT

7  FOR THE DISTRICT OF ARIZONA

8

9  N'Genuity Enterprises Co., an Arizona)     No. CV-09-385-PHX-GMS
   corporation,                        )
10                                      )     **ORDER**
                Plaintiff,              )
11                                      )
   vs.                                  )
12                                      )
                                        )
13 Pierre Foods, Inc., *et al.*,        )
                                        )
14              Defendants.             )
                                        )
15 _____)

16

17         Pending before the Court is Defendants' partial motion to dismiss (Doc. 59). For the

18 following reasons, the Court grants the motion in part and denies it in part.

19                              **BACKGROUND**

20         On September 9, 2009, the Court granted-in-part and denied-in-part Defendants' first

21 motion to dismiss. (Doc. 45). On January 19, 2010, Plaintiffs filed an Amended Complaint

22 (Doc. 56), and Defendants then moved to dismiss the case in part.

23         The main facts of this case are set forth in the Court's September 9, 2009 Order

24 pertaining to the first motion to dismiss ("September 9 Order"), which the Court granted in

25 part and denied in part. (Doc. 45); *N'Genuity Enterprises Co. v. Pierre Foods, Inc.*, 2009 WL

26 2905722 (D. Ariz. Sept. 9, 2009). The Amended Complaint offers the following relevant

27 changes from the original complaint.

28

First, Plaintiff alleges that Defendants Norb Woodhams, Jr. ("Woodhams Jr.") and Norb Woodhams, Sr. ("Woodhams Sr.") committed many of the actions previously alleged only against Pierre Foods, Inc. ("Pierre Foods"). Second, the Amended Complaint alleges that Woodhams Jr. directed Ken Carlton to make various representations to N'Genuity. Third, the Amended Complaint supplements its fraud-based claims with additional factual detail, such as sources, dates, and substances of particular representations made to N'Genuity.

The Amended Complaint alleges twelve claims against various Defendants: (1) Breach of Contract, (2) Breach of the Duty of Good Faith and Fair Dealing, (3) Fraudulent Misrepresentation, (4) Fraudulent Concealment and Nondisclosure, (5) Fraudulent Inducement, (6) Interference With Existing Contractual Relationships, (7) Interference With Prospective Business Relationships, (8) Unfair Competition, (9) Defamation, Libel, and Slander, (10) Trade Libel and Slander, (11) Misappropriation of Trade Secrets and Proprietary Information, and (12) Declaratory Judgment. The September 9 Order dismissed several claims with prejudice and several claims without prejudice. (Doc. 45). The Court dismissed the following claims with prejudice: all claims against Pierre Foods based on events occurring prior to December 12, 2008 as discharged by the bankruptcy petition; Claim Two for the Breach of the Duty of Good Faith and Fair Dealing against all Defendants, but only to the extent that the claim relies on pre-contract actions; and Claim Five for Fraudulent Inducement against Pierre Foods. The Court also dismissed the following claims without prejudice: Claim Three for Fraudulent Misrepresentation and Claim Four for Fraudulent Concealment and Nondisclosure against all Defendants; Claim Five for Fraudulent Inducement against the Individual Defendants; Claim Nine for Defamation, Libel, and Slander and Claim Ten for Trade Libel and Slander against Woodhams Jr. and Woodhams Sr. The Court denied the original motion to dismiss with respect to the remaining claims.[1]

---

[1] Plaintiff's Amended Complaint also realleges several of its claims that were dismissed with prejudice in the September 9 Order. These claims, however, are merely

**DISCUSSION**

**I.    Personal Jurisdiction**

Although the September 9 Order determined that the Court has personal jurisdiction over the Individual Defendants, the same Defendants nonetheless now contend that the Court lacks jurisdiction.  The Court, however, has already decided this argument lacks merit.  In the September 9 Order, the Court explained that it had jurisdiction because the complaint alleged that the Individual Defendants committed intentional and tortious actions aimed at Arizona. (Doc. 45 at 10).  As the Amended Complaint again pleads that the Individual Defendants directed fraudulent acts at Arizona, the Court has personal jurisdiction over the Individual Defendants. *See Davis v. Metro Prods.*, 885 F.2d 515, 520 (9th Cir. 1989).  And to the extent Defendants assert that the Court now lacks personal jurisdiction over the Individual Defendants because "N'Genuity has not alleged any *sustainable* tort claim against them[,]" (Doc. 59 at 4), that argument is really an attack only on the sufficiency of the claims.  Accordingly, the Court retains personal jurisdiction over all Defendants.

**II.   Individual Claims**

To survive dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action[;]" it must contain factual allegations sufficient to "raise a right of relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556).  The plausibility standard "asks for more than a sheer possibility that a

reasserted to preserve those issues for appeal.

defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal citations omitted). Similarly, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

Certain elements of fraud claims carry a higher standard of pleading under the Federal Rules Civil Procedure: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition[s] of the mind of a person may be averred generally." Fed. R. Civ. P. 9(b) (emphasis added). Under this rule, a plaintiff "must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged.").[2]

### A.     Claims 1–2 (Breach of Contract/Duty of Good Faith and Fair Dealing)

#### 1.     Individual Defendants

Defendant moves to dismiss Claims One and Two against the Individual Defendants because the Amended Complaint does not allege that a contract existed between any of the Individual Defendants and N'Genuity. Plaintiff agrees that these Claims apply only to Pierre

---

[2] Defendants have requested judicial notice of various documents. For purposes of this Order only, the request is denied. These documents do not aid the Court's decision and merely create factual *disputes* giving rise to an inference that Defendants may not be not liable for certain claims. A mere inference against liability created by external evidence, however, is not a basis for granting a motion to dismiss. The Court will not utilize judicial notice as a method for making factual determinations more appropriately decided upon a motion for summary judgment.

Foods. Therefore, to the extent the Amended Complaint may be construed to apply to any Individual Defendants, dismissal is appropriate.

## 2. Bankruptcy Discharge

As the Court stated in its September 9 Order, Plaintiffs' claims are barred to the extent they are "based on events occurring prior to December 12, 2008," which was the date of the bankruptcy confirmation date. (Doc. 45 at 13). "[T]he confirmation of a [bankruptcy] plan discharges the debtor from any debt that arose before the date of such confirmation." 11 U.S.C. § 1141(d)(1)(A). "Debt" includes "liability on a claim." *Id.* § 101(12). The Court previously explained that, to determine whether a claim has arisen, and thus has been discharged, the Court examines when "the events giving rise to the claim" occurred and when the claimant could have "fairly or reasonably contemplate the claim's existence." (Doc. 45 at 13) (citing *O'Loghlin v. County of Orange*, 229 F.3d 871, 874 (9th Cir. 2000); *In re SNTL Corp.*, 571 F.3d 826, 839 (9th Cir. 2009)).[3]

Defendants assert that several breaches are barred because N'Genuity could have reasonably contemplated that it may have had a breach of contract claim prior to December 12, 2008. In general, when determining whether a party may have fairly contemplated a claim, "[i]t is within the fair contemplation of parties entering into a contract that the other party may breach it, or have made misrepresentations to induce the making of the contract." *In re Hassanally*, 208 B.R. 46, 53 (Bankr. 9th Cir. 1997) (quoting *In re Russell*, 193 B.R. 568, 571 (S.D. Cal. 1996)). Where the "debtor committed the act or omission complained of prior to filing bankruptcy, and the claimant has a relationship to the act or omission at the time, such as being . . . a contracting party, the claim arose at that point in time even if there has been no indication or manifestation of the consequences of the act or omission." *Id.* (quoting *Russell*, 193 B.R. at 571); *see also In re Alan Dealey Litig.*, 2008 WL 4153675

---

[3] The Court acknowledges that, in some circumstances, differences may arise in analyzing whether the conduct giving rise to a claim has occurred and whether a party could have fairly contemplated the existence of a claim. In the present case, however, the distinction is of no consequence.

(E.D. Wash. Aug. 29, 2008) (holding that breach of contract claim was discharged because substantial negotiation of the contract had occurred prior to the discharge date and because it was logically impossible to separate the pre-petition conduct and negotiations from the ultimate breach).

Here, N'Genuity and Pierre Foods had developed an extensive contractual relationship prior to the discharge date. The Amended Complaint alleges that the parties engaged in numerous representations and had even undertaken some of the performance under their agreement. To the extent Claims One and Two are based on these allegations, the claims are barred, as the events giving rise to such claims occurred prior to the discharge date and as N'Genuity could have reasonably contemplated such claims prior to the discharge date.

While an argument could be made that the entirety of Claims One and Two should be dismissed because of the extent of the prepetition contractual relationship, Defendants do not move for full dismissal of these claims. Rather, Defendants leave open the possibility that certain claims are not discharged if they are based on Pierre Foods' post-discharge conduct, such as improperly selling N'Genuity's products, selling shelf-life deficient products,[4] soliciting business, or using N'Genuity's proprietary information. Therefore, the Court does not dismiss Claims One and Two to the extent they are based on these alleged post-discharge breaches.

**B.      Claims 3–5 (Fraud-Based Claims)**

In the September 9 Order, the Court dismissed Claim Five for fraudulent inducement in its entirety as against Pierre Foods with prejudice[5] and dismissed the same claim against the Individual Defendants without prejudice. The Court also dismissed Claim Three for

---

[4] Despite Defendants' contention, the Complaint adequately pleads that Pierre Foods shipped shelf-life deficient products in February 2009.

[5] In a footnote, Plaintiff contends that its fraudulent inducement claim against Pierre Foods should be revived in part. The dismissal of that claim, however, was with prejudice.

fraudulent misrepresentation and Claim Four for fraudulent concealment and nondisclosure against all Defendants without prejudice.

Defendants contend that the remaining fraud-based claims against Pierre Foods are barred because they arose pre-discharge. While a fraud claim accrues when it may be fairly contemplated, the claim nonetheless accrues when "there [are] enough facts to show . . . notice of the harm . . . subsequently alleged to be fraudulent." *Stickrath v. Globalstar, Inc.*, 2008 WL 5384760 at *4 (N.D. Cal., Dec. 22, 2008) (citing *In re Morgan*, 197 B.R. 892, 898–99 (N.D. Cal. 1996)). Fair contemplation of a fraud claim may exist even if a party lacks "complete knowledge of all pertinent facts." *See id.* Fair contemplation is likely where a potential claimant engages in negotiations and makes inquiries to guard against the possibility of being defrauded. *Morgan*, 197 B.R. at 899.

Plaintiffs do not dispute Defendants' argument that most of the various acts of fraudulent misrepresentation and concealment occurred prior to the discharge date and that N'Genuity pled that it was aware of at least some of these facts. N'Genuity nonetheless argues that the various representations were part of several "schemes" that were not reasonably contemplated until after the discharge date. While some facts in the Complaint may suggest that N'Genuity could have been aware of the harm giving rise to the fraud-based claims, this determination is more appropriately decided on a motion for summary judgment. Nothing in the Complaint clearly forecloses the possibility that the fraud-based claims, in general, could have survived discharge. Because the briefs argue factual matters, however, and because no discovery has been undertaken, the Court will not dismiss these claims in their entirety to the extent that N'Genuity may raise non-discharged claims that are consistent with both the Amended Complaint and this Order.

Aside from the potential discharge of Plaintiff's claims, Defendants further move to dismiss the fraud-based claims based on the substance of these claims. The Court previously dismissed the fraud-based claims against the Individual Defendants without prejudice because of Plaintiff's failure to comply with Federal Rule of Civil Procedure 9(b). Plaintiff has now re-pleaded those claims.

Defendants first argue that Ohio law prevents Plaintiff from raising fraud claims that are really based only on breaches of contract. The parties dispute whether Ohio law or Arizona law applies, but the Court need not address this issue because Defendants' argument fails even under Ohio law. Under Ohio law, "[a] tort exists only if a party breaches a duty which [it] owes to another independently of the contract, that is, a duty which would exist even if no contract existed." *Battista v. Lebanon Trotting Ass'n*, 538 F.2d 111, 117 (6th Cir. 1976) (citing *Bowman v. Goldsmith Bros. Co.*, 109 N.E.2d 556 (Ohio Ct. App. 1952)). "[W]hen the promisee's injury consists merely of the loss of [its] bargain, no tort claim arises because the duty of the promisor to fulfill the term of the bargain arises only from the contract." *Id.* Further, while statements regarding future conduct generally do not give rise to a fraud claim, a plaintiff may properly plead a fraud by alleging specific facts indicating that the promisor intended not to honor its obligations at the time the promise was made. *Drexel Burnham Lambert, Inc. v. Saxony Heights Realty Assoc.*, 777 F. Supp. 228, 235 (S.D. N.Y. 1991).

Plaintiff appears to respond to this argument only with respect to Pierre Foods, Woodhams Jr., and Woodhams Sr.; to the extent that the fraud claims may have been pled against others, neither the Response nor the Amended Complaint appear to support such claims. The Amended Complaint does allege, however, that Pierre Foods, Woodhams Jr., and Woodhams Sr. committed various acts of fraud that are separable from the breach of contract claims.[6] For example, the Amended Complaint alleges that Pierre Foods,

---

[6] As a preliminary matter, it does not appear that this argument even applies to the Individual Defendants. Defendants do not explain how Plaintiff merely alleges contract claims that are "dressed up" as fraud claims against the Individual Defendants, who are not parties to any agreement between N'Genuity and Pierre Foods. While a plaintiff may not parlay a breach of contract claim into a fraud claim, a plaintiff has no contract claim against an individual who is not a party to the contract. Therefore, Plaintiff's allegations that the Individual Defendants made various misrepresentations and omissions, even if those statements related to the underlying contract between N'Genuity and Pierre Foods, would not support contract-based claims and thus are not barred by the rule pertaining to the merger of contract and fraud claims.

Woodhams Jr., and Woodhams Sr. each lied about an intent to compete, to continue over-producing chicken wings, and to sell self-life deficient products. The Complaint also includes more than blanket assertions that Defendants knew at the time they made particular statements that the statements were false and that any promises offered were made with no intent to follow up on those promises. The Amended Complaint further alleges that these statements and omissions were all part of one scheme to maintain a relationship with N'Genuity that would allow the Defendants to profit at N'Genuity's detriment. Because the elements of fraud have been sufficiently pled under Rule 9, dismissal at this stage is premature.

Additionally, dismissal is not appropriate merely because Plaintiff has alleged both fraud and contract claims. Plaintiff may plead in the alternative. While Plaintiff may not base its fraud claims solely on its contract claims, Plaintiff may properly allege that its fraud claims exist independently even though they share a similar factual background with the contract claims.

Contrary to Defendants' allegations, Plaintiff adequately alleges that Defendants' misrepresentations were false when made. Plaintiff alleges that the description of the Zartic successorship was false. Defendants stated that Pierre Foods was Zartic's successor, which N'Genuity contends mislead it into believing that Pierre Foods maintained Zartic's basis business structure. To the extent that Pierre Foods was in fact the successor-in-interest to Zartic, the Amended Complaint nonetheless pleads facts suggesting that Defendants made intentionally misleading statements. A reasonable interpretation of the facts is that Defendants intentionally allowed N'Genuity to falsely believe that Pierre Foods maintained a majority of the Zartic business structure after the successorship agreement took place.

In addition, while statements regarding future conduct cannot, by definition, be false when made, a reasonable reading of the Amended Complaint is that Defendants had a scheme to defraud N'Genuity, in which promises were made to continue to secure N'Genuity's reliance, even though Defendants never had any intention to follow through with those promises. *See Drexel*, 777 F. Supp. at 235 (explaining that statements regarding

future promises may be fraudulent if, at the time the promises were made, the promisor intended not to honor its obligations).

### C.    Claims 6–7 (Tortious Interference Claims)

Defendants move to dismiss the tortious interference claims only on the ground that the Amended Complaint fails to allege any wrongdoing to any contractual or business relationship. In the September 9 Order, however, the Court held that this argument "strains credulity." The Amended Complaint clearly alleges that N'Genuity had ongoing business relationships with prime vendors, that Defendants took steps to diminish N'Genuity's ability to continue these relationships, and that N'Genuity's business was harmed as a result. Accordingly, Claims Six and Seven are not dismissed.

### D.    Claim 8 (Unfair Competition)

Defendants next argue that, as to Pierre Foods, the only post-discharge unfair competition claim is based on a violation of a purported agreement not to compete. The Court previously noted, however, that Plaintiff stated an unfair competition claim based on Pierre Foods' attempt to pass off N'Genuity's chicken wing products as its own. (Doc. 45 at 22). Plaintiff also asserts, and Defendants do not dispute, that other facts supporting an unfair competition claim include Pierre Foods' sale of chicken wing products directly to N'Genuity's customers, while disclosing secret information and intentionally making false and disparaging statements regarding N'Genuity's business practices.

Defendants further contend that the Amended Complaint includes no allegations of unfair competition as against the Individual Defendants. "Unfair competition ordinarily consists of representations by one person, for the purpose of deceiving the public, that his [or her] goods are those of another." *Water Mgmt., Inc. v. Stayanchi*, 15 Ohio St.3d 83, 85, 472 N.E.2d 715, 717 (1984). "The concept of unfair competition may also extend to unfair commercial practices such as malicious litigation, circulation of false rumors, or publication of statements, all designed to harm the business of another." *Id.* Plaintiff points to allegations that Woodhams Jr. and Woodhams Sr. improperly sold products to N'Genuity's customers, damaged customer relations by shipping shelf-life deficient products, sold products without

authorization, lied about and concealed their business practices, and perpetrated a scheme to conceal these actions from N'Genuity.[7] The Amended Complaint also alleges that Denning sought to harm N'Genuity's business relationships by publishing false statements about N'Genuity. Depending on the additional factual detail revealed by discovery, these allegations may raise a claim for unfair competition.[8]

### E. Claims 9–10 (Defamation-Based Claims)

Defendants move to dismiss Claims Nine and Ten as against Woodhams Jr. and Woodhams Sr. As Plaintiff agrees these claims were not pled against Woodhams Jr. or Woodhams Sr., Claims Nine and Ten survive only with respect to Pierre Foods and Denning. Plaintiff requests that dismissal against Woodhams Jr. and Woodhams Sr. be without prejudice "lest discovery reveal either party was involved." (Doc. 68 at 10 n. 5). While the Court may entertain a motion to amend at the appropriate time, it suffices now to simply dismiss any claims against Woodhams Jr. and Woodhams Sr. Dismissal, therefore, is without prejudice.

[7] Plaintiff's Response also contends that Woodhams Jr. violated "his obligations" under Pierre Foods' agreements with N'Genuity. As Woodhams Jr. was not a party individually to any contract, the unfair competition claim against Woodhams Jr., based solely on his breach of the contractual obligations of Pierre Foods, is without merit.

[8] Defendants argue in their Reply that an unfair competition claim may not be based solely on the alleged misappropriation of trade secrets. The Court need not consider this argument. First, the argument was not raised in the initial Motion. Second, because the Court has concluded that the Complaint otherwise pleads a claim for unfair competition, the Court need not decide at this time the extent to which facts supporting a misappropriation claim may also support an unfair competition claim.

### F.    Claim 11 (Misappropriation)

Defendants next move to dismiss Claim Eleven as against the Individual Defendants. Under the Ohio Uniform Trade Secrets Act, a misappropriation must include either an "[a]cquisition of a trade secret" or the "[d]isclosure or use of a trade secret." Ohio R.C. § 1333.61(B).

Plaintiff points to several portions of the Complaint in support of its claim. First, Plaintiff alleges that Woodhams Jr. obtained and used N'Genuity's trade secret— its formula and specifications for its chicken wing product—to overproduce and sell wings. Plaintiff also argues that Woodhams Jr. and Woodhams Sr. misappropriated trade secrets by selling wings to N'Genuity's military customers, the Prime Vendors. While it is unlikely that either Woodhams Jr. or Woodhams Sr. *personally* sold wings, it is possible that discovery would reveal support for such a theory; if so, Plaintiff could then support a claim for misappropriation against Woodhams Jr. and Woodhams Sr. individually. Plaintiff further argues that Woodhams Jr. and Woodhams Sr. breached "their obligations and duties" to maintain the secrecy of N'Genuity's recipe. (Doc. 68 at 10). While it appears that Woodhams Jr. and Woodhams Sr. were not personally parties to any contract, this does not necessarily mean that Plaintiff's misappropriation claim against Woodhams Jr. and Woodhams Sr. is based solely on a "breach" of contract. Rather, it is plausible that Woodhams Jr. and Woodhams Sr. could have improperly disclosed a trade secret, which would give rise to a misappropriation claim.

With respect to Denning, the Complaint alleges that Denning helped coerce N'Genuity's customers to purchase the product sold by Pierre Foods without authorization. This allegation alone, however, fails to meet the definition of "misappropriation" under Ohio law, as coercing others to purchase products is not the acquisition, disclosure, or use of a trade secret. *See* Ohio R.C. § 1333.61(B). Therefore, the misappropriation claim is dismissed as against Denning.

### G. Claim 12 (Declaratory Judgment)

Defendants argue that Claim 12 should be dismissed as against the Individual Defendants. While Plaintiff contends that it pled Claim 12 against all Defendants, the face of the Amended Complaint provides otherwise. The Amended Complaint discusses a "controversy between the parties regarding their rights and obligations under the N'Genuity Supplier Agreement, the Confidentiality and Non-Disclosure Agreement, and otherwise." (Doc. 56 at 41). The Amended Complaint further specifies that it seeks a declaratory judgment "that it performed all of its obligations under the contracts, that it did not breach or violate any obligations or duties to Pierre Foods, and that Pierre Foods is not entitled to sell any N'Genuity product to the Prime Vendors or to anyone else." (*Id.*) As Claim 12 is based only on N'Genuity's contractual relationship with Pierre Foods, the claim is dismissed as against the Individual Defendants.

**IT IS THEREFORE ORDERED** that the Motion to Dismiss (Doc. 59) is **GRANTED IN PART** and **DENIED IN PART**. The following claims are dismissed. In all other respects, the Motion is denied.

1. Claims 1 and 2 are dismissed as against the Individual Defendants with prejudice.

2. As against Pierre Foods, Claims 1 and 2 are not dismissed to the extent only that these Counts are based on Pierre Foods' post-discharge conduct.

3. As against Pierre Foods, the Court reiterates that Claim 5 has been dismissed with prejudice.

4. Claims 3, 4, and the remainder of Claim 5 are not dismissed only to the extent that any claims may not have been fairly contemplated prior to the discharge date.

5. Claim 9 is dismissed as against Defendants Woodhams Jr. and Woodhams Sr. without prejudice.

/ / /

/ / /

/ / /

6. Claim 11 is dismissed as against Defendant Denning only.

7. Claim 12 is dismissed as against the Individual Defendants.

DATED this 30th day of July, 2010.

_____

G. Murray Snow
United States District Judge